May it please the Court, my name is Mary Sheets. I represent the appellant, the Phoenician Mediterranean Villa. Your Honors, as you know... You're reserving time for rebuttal? Yes, Your Honor. I would ask the Court to grant me two minutes. Granted. For rebuttal. As Your Honor knows, we've appealed the bankruptcy and the District Court's grant of immunity to the trustee in this case, Lisa Swope. What transpired in this case was that the trustee rejected the lease between the debtor and the Phoenician in November of 2013, which means under Section 365 of the Bankruptcy Code that the tenant is entitled to remain in possession of the premises and is entitled to quiet enjoyment pursuant to applicable non-bankruptcy law. In January of 2014, there was a cold spell in Altoona, Pennsylvania. And on January 13th, there was a pipe that burst in the Phoenician restaurant in Altoona. The Phoenician went into the restaurant after learning of the burst pipe, hired Service Master, which is a disaster recovery company, and proceeded to start cleaning up the damage, including putting in drying equipment to dry out the floor. Ms. Sheets, I'm sorry to cut you off, but we are well versed in the facts. So would you treat the legal argument for us? Right. Your Honor, under Mosser v. Darrow, the trustee has an obligation to comply with the Bankruptcy Code. The trustee who does not comply with the Bankruptcy Code is subject to liability. In this particular instance, the trustee became upset because the Phoenician did not attend a meeting after the recovery efforts began. Do you concede that Trustee Swope is entitled to absolute immunity for actions taken after the February 7, 2014 Bankruptcy Court Order? Well, to the extent that the Court erred in affording her immunity, no. What Judge Stellar did is Judge Stellar determined that the bankruptcy trustee had no obligation to comply with applicable Pennsylvania law, that his trustee is absolutely immune, and that because a pipe had burst and the Phoenician had failed to attend a meeting, he thought that was an exigent circumstance. Remember that the recovery, the repair... What if the February... I'm surprised by your answer because I thought we were dealing with the January time frame up until February 7th. We are dealing with the January time frame. Well then, but my question to you was, for Swope's actions after the February 7th order, you're saying she's not entitled to immunity? Those actions were taken pursuant to a court order whereby the judge granted her possession of the premises, saying that there were exigent circumstances. Obviously, she complied with the court order, but the court erred in giving her that immunity. Now, what happened was that under Pennsylvania law, which is the applicable law under Section 365, a tenant can't be evicted without prior notice. There has to be a 30-day written notice. Okay, let's suppose you're right on that, but what I want to know is really what actions of the trustee are you challenging that were either outside the scope of her authority or were ultra-virus? Her ultra-virus act was that under Section 365, she dispossessed a tenant who was entitled to possession under applicable Pennsylvania law, the applicable non-bankruptcy law. She was required to comply... In doing that, wasn't she acting in a quasi-judicial capacity? She acted after remediation began. There was no emergency. That's not my question. Wasn't the function that she was performing one that she performed in a quasi-judicial capacity? She acted beyond the scope of her authority, and she exceeded her jurisdiction. Just like the trustee in Mosser v. Darrow. She exceeded her authority and her jurisdiction. Even if she did that, though, she would be entitled to qualified immunity unless her conduct was contrary to clearly established law. Correct. What's the clearly established law that says she couldn't do what she did in this case? Pennsylvania law. Applicable non-bankruptcy law. You need to cite a case or a statute. You can't just say Pennsylvania law. It's the Landlord-Tenant Act. Where in the Landlord-Tenant Act does it indicate that the bankruptcy trustee was prohibited from doing what she did here? The bankruptcy trustee stands in the shoes of the landlord. The landlord, according to the Pennsylvania Supreme Court, Philadelphia v. Furman, can't evict by self-help. Well, how do we know this was an eviction? I thought she went in to deal with the burst pipe situation. The tenant was evicted by self-help. The tenant was dispossessed, taken out of possession, without the required 30-day notice, without the required lawsuit being filed. So you're saying all of those requirements of Pennsylvania law regarding the Landlord-Tenant Act are equally effective when there's a federal bankruptcy? Because Section 365H, A1, Subsection II says that when the trustee rejects a lease, the tenant is entitled to remain in possession, quiet enjoyment, pursuant to applicable non-bankruptcy law. But under bankruptcy law, the trustee has the duty to preserve the property. And the trustee here says, I had to do this to preserve the property. Doesn't that trump Pennsylvania state law? Well, the trustee has a duty to comply with the law according to the trustee handbook and according to Section 365. The law requires the trustee to pursue applicable landlord-tenant remedies before evicting a tenant by self-help. But if an emergency requires immediate action by the trustee to preserve the property, isn't that the primary duty of the trustee, and isn't it she then justified in disregarding Pennsylvania law because to save the property she had to act immediately? Well, the property was already being repaired. There was a single pipe burst in a corner in the office in the back of the restaurant where there was no heat. That flooded the office, which was where the tenant had their tax papers and computers. That wet the floor, which was a hardwood floor, which was like a deck. They were in there drying it out. Now the trustee had already rejected that lease, so there was no executory obligation between the tenant and the trustee, and there was insurance coverage. So it really was an exigent. Remember that the trustee has their own umbrella policy that they put in on every single property. So there was insurance coverage, and it was just a pipe break. So they were in there with drying equipment with ServiceMaster and then ServicePro drying it out. What happened was the trustee was okay with that. Two or three days after the break, the trustee wanted to have a meeting to go in and look at the property. The principal of the tenant couldn't get there. I couldn't get there. She got mad. She couldn't get the inner door open because it was sticking, and if we ever get to trial, there was evidence that it stuck on another occasion, and she couldn't get it open. She decided that she was going to have the locks changed. The debtor was there with her, the principal of the debtor, Mr. Folkt. He went ahead and changed the locks for her, delivered the keys to his counsel who then gave them to the trustee. There really wasn't anything exigent about it, Your Honor. Are there any federal cases with facts that are similar to this one that indicate that a trustee violated clearly established law by engaging in some sort of landlord-type self-help? Well, you mean with regard to a tenant? The cases only deal with secured creditors who had property in the premises. No, I'm asking about bankruptcy trustees. Right. Are there any federal cases like this one where bankruptcy trustees were held to a violated clearly established law? Yes, the Mosser v. Darrow case. Mosser. There's some Ninth Circuit cases out of the Ninth Circuit which talk about trustees who there is a Colchis case where the trustee was in charge of liquidating a land development, which was essentially one of those Ponzi schemes, and the trustee unlawfully collected money from the people who were involved in the rejected executory contracts. But there's no specific case right on point where a tenant of the debtor was locked out by the trustee. Now, there's a couple cases, a Vrooman case, Leonard v. Vrooman, also out of the Ninth Circuit, where the trustee went in and took property that did not belong to the estate. But there's no cases right on point where a tenant was locked out by self-help. And if there are no cases right on point, it makes it hard to not grant qualified immunity. Well, actually, if the trustee violates clearly established law and also doesn't comply with the Bankruptcy Code, the Bankruptcy Code requires the trustee to comply with applicable non-bankruptcy law, which in this case is Pennsylvania law. And it's absolutely clear under Pennsylvania law that self-help evictions... But if there's a conflict between the trustee's obligations under federal bankruptcy law and state law, then they must follow the federal law, correct? There really isn't, because the Federal Bankruptcy Code says that applicable non-bankruptcy law controls under Section 365H. Even if a federal law says otherwise? What it says... That's a direct assault on the Supremacy Clause, is it not? Well, what the Code says, Congress said this, is that once a trustee rejects a lease, the tenant's entitled to remain in possession and quiet enjoyment pursuant to applicable non-bankruptcy law. Now, what Judge Duller said is he thought that an exigent circumstance would vitiate compliance with applicable state law. But we really don't have an exigent... Even if there were authority for that, which he didn't have any authority for that, nor did the District Court. What they were relying on, truly, was... There's a lot of case law out of the other circuits, other than the Ninth Circuit and the Second Circuit, where the trustee has to be grossly negligent. And the trustee has to act with clear absence of all jurisdiction. And that gets back to my earlier question, quasi-judicial immunity. She was acting in a discretionary fashion. She was performing a function that, if she were a judge, would be typical to what a judge would perform in a case involving two parties. Why isn't that quasi-judicial immunity? Well, the Third Circuit hasn't actually ruled on that. That's why we're here. That's why you're here. What the question is, is the trustee, like a judge, in terms of immunity... But haven't the cases said you have to look at how they function? Right. The Supreme Court in Antone v. Byers took a two-step approach in looking at non-judicial immunity. Right. And isn't that what we have here? That's why I asked you, what did she do wrong initially? Well, the court report is a little different, of course, in that case. Does a trustee get the same immunity as a judge? That's obviously the issue that you get to decide. But even a judge acting beyond the bounds of that judge's jurisdiction... You want to take us back to yesterday. You don't want to get into all that, do you? Well, if the trustee's jurisdiction and judge, their authority, their discretion, is determined by the bankruptcy code, they don't have the authority to evict tenants. They have to go to the court to have the court evict the tenant. This trustee decided to evict a tenant on her own. Did she have authority to do that or any kind of jurisdiction to do that? No. The answer is she has to go to a judge, get a hearing to have the tenant evicted. She's not a judge. Does she have the same immunity? Does she have the same jurisdiction? It's beyond her jurisdiction. She acted in the absence, the clear absence of all jurisdiction. That's what we're saying, Your Honor. Until she got the court order on February 7th. Well, when she got the court order on February 2nd, then she was shielded by the court. But the court's position was that landlord-tenant law was simply irrelevant, that due process was irrelevant. Even though we have a situation where we have complete insurance coverage, there's really no danger to the estate, and the estate in any event was minimal. Plus, the only unsecured creditors in the case are the Pho Nation and Mr. Folkt, the owner of the debtor who's also filed a claim, and a $650 claim filed by the U.S. trustee. There really weren't any unsecured creditors. All right. We'll hear you on rebuttal, Ms. Sheets. Thank you, Your Honor. Mr. Sperl. Good morning, Your Honors, and may it please the court. My name is Andrew Sperl with Duane Morris. I represent the FLE, Lisa Swope, who was and is the trustee of the bankruptcy estate at issue in this case. The issue in this case is not what Pennsylvania landlord-tenant law requires. It's not whether Pennsylvania landlord-tenant law was followed in this case, nor is it true that the bankruptcy court's opinion held that the requirements of landlord-tenant law no longer apply when there's exigent circumstances. This case is not about that underlying law. This case is about whether or not the trustee has immunity. That's a separate issue from whether or not there was some aspect of landlord-tenant law that applies and whether or not that was violated. Well, aren't the two questions related? Because if the trustee violated clearly established landlord-tenant law and did so without some sort of federal privilege through empowerment of the bankruptcy code or federal case law, then she would have been acting in violation of clearly established law under that hypothetical, would she not? So if I could take the opportunity at this point to highlight, there are two ways that we can get to immunity in this case, which you saw in our brief. There's quasi-judicial immunity, which flows from the Supreme Court's decision in Antwon, and there's also qualified immunity under the Supreme Court's decision in Harlow v. Fitzgerald and its progeny. I think the question that your Honor is asking is getting to the second prong of the Harlow qualified immunity analysis. If that were the only form of immunity that were available here, if there was no quasi-judicial immunity, and if it were the case, which I think some of the Court's questions to Ms. Sheets show that it's not the case, but if it were the case that it were clearly established law that a bankruptcy trustee acting to secure the assets of a bankruptcy estate, that that violated clearly established law in the circumstances, then qualified immunity under Harlow v. Fitzgerald would not be available. There would still be the issue of quasi-judicial immunity under Antwon. Similarly, we don't need to dispute that under Section 365 of the Bankruptcy Code, the tenant, after the lease was rejected, retained the right, if it elected, to remain in the property. But again, Section 365 of the Bankruptcy Code nowhere provides that the trustee is to be held viable for any breach of a future covenant. In fact, Section 365 does provide a remedy. It provides a remedy in the form of offsetting rent to the extent that the landlord breaches a future covenant of the lease. It does not do anything to abrogate the trustee's immunity. I don't want to dwell on the factual situation here. I know the Court is familiar with the facts. I do just want to clarify two things about the facts. First of all, it was not the trustee in this case who changed the locks, and I recognize there may be a dispute about this based upon what my colleague, Ms. Sheets, said in her opening argument. You can look at our brief where we talk about how the sequence of events was that. There was a meeting to assess the damage to the property. They couldn't get in the next day, which was the 16th of January. Trustee Swope filed a motion with the Court. After she filed that motion, she was given a key by the landlord's debtor, or the debtor's principal, who had changed the locks on his own. I raise this because it's difficult to conceive of a set of facts that better exemplifies the need for trustee immunity than the set of facts in this case. We can argue about whether or not there were exigent circumstances, but it was clear that there was property damage, and the trustee convened a meeting for a very legitimate reason to assess the extent of that property damage and determine if anything else needed to be done. Indeed, as Judge Roth pointed out, the principal obligation of the trustee in this case is to secure and maintain the assets of the estate. Had she not taken action at this point to try to evaluate the property, she would be between a rock and a hard place, and she would risk not fulfilling her fiduciary obligations to the estate in so doing. To impose liability, and that's not to say that anything here was done wrong. Maybe a better way to put it would be to subject to suit the trustee who acts in these circumstances when she's acting within the scope of her jurisdiction, the scope of her responsibilities. Liability would make it very difficult, frankly, to attract qualified people to be trustees if that risk is put upon them. That's a risk that Judge Fischer recognized in the Vistacare decision from 2012. That dealt with jurisdiction under the Barton doctrine rather than immunity, but the same types of considerations are in place. If trustees are subject to suit in circumstances like this, then that's a very powerful disincentive to take that position. Your Honors, Phoenician in its briefs and here at oral argument doesn't really engage the analysis of quasi-judicial immunity at all. Nor does Phoenician contest that where a bankruptcy trustee is acting pursuant to a court order, there is absolute immunity as the bankruptcy court reasoned. That principle is essentially undisputed here, and it seems to be undisputed based upon Ms. Sheets' argument that after the February 7th order was entered, which provided that the Phoenician did not have possession of the property and that the trustee was to be in exclusive possession of it, that there can be no liability after that time because she was acting pursuant to an express court order. I would note also that even prior to the events of January 2014, in November of 2013, and I believe this is in appendix page 99, the order providing for the rejection of the lease also provided that the tenant is prohibited from entering the Logan Boulevard property and from removing any assets of the estate. Now, of course, that order does not say that the tenant, if given the keys by the debtor's principle, shall retain the keys because there's no way that could have been foreseen. But I would submit, first of all, the trustee's scope was arguably acting in accordance with that order. Secondly, to the extent that the order wasn't specific enough to encompass these events, that only underscores, again, why immunity is so important. Sometimes, as the amici in this case have argued as well on our behalf, it's not uncommon that trustees have to make decisions in a short amount of time and that they have to do so to fulfill their primary obligation of securing the bankruptcy estate. Mr. Sperl, on the question of qualified immunity, did you properly raise the question of the defense of qualified immunity in the bankruptcy court? And by qualified immunity, just to make sure I understand your question, you mean pursuant to Harlow v. Fitzgerald? Yes. Your Honor, I believe I was briefed in connection with the second motion to dismiss. There were two motions to dismiss in this case. The first was on the Barton Doctrine. The second was on the issue of immunity. To the extent that it wasn't, because I don't have that before me, I would submit that that is an alternative grounds for affirmance of the bankruptcy court's decision. I think that the best, I don't want to say the best, the way of approaching the immunity question that's most consistent with what other courts and circuits have done is through the framework of quasi-judicial immunity. It just seems a little more aggressive than qualified immunity in a case where it doesn't seem obvious that it's quasi-judicial immunity before February 7th. Your Honor, I would submit that the elements of quasi-judicial immunity at all times were clearly satisfied in this case. I think that the best guidance to look to as to whether quasi-judicial immunity existed in this case is the Ninth Circuit's decision in Castillo. We cite that in our brief.  But instead of the issue with court reporters, it specifically deals with a bankruptcy trustee. It goes through a detailed historical analysis, which the bankruptcy court in this case applied to determine, first of all, the first prong, if you can call it that, of the Antoine analysis, that bankruptcy trustees in general may enjoy qualified immunity, or excuse me, quasi-judicial immunity. Quasi-judicial immunity is extended to a lot of different actors, and bankruptcy trustees are among them. The second issue is whether or not the individual was performing a function that requires discretionary judgment similar to that of a judge. And I think, Judge Fisher, you were getting at some of your questions to Ms. Sheets. In this case, that type of function clearly was being performed. It was certainly not a ministerial function deciding how to deal with this situation, and it's similar to the type of judicial function that would be performed. Those are the elements that have to be satisfied for quasi-judicial immunity, and I believe that they were clearly satisfied in this case. There's no issue that I don't believe that Trustee Swope was acting outside her jurisdiction. First of all, as the bankruptcy court found, and as is evident from Section 704 of the Bankruptcy Code, it is within her duties and obligations to security the state. But if we said quasi-judicial immunity applied, would you not be empowering any trustee at any time just after this lease was rejected, correct? Yes, the lease was rejected. So wouldn't you be empowering them to go in and just engage in self-help repossession of a leasehold any time the lease is rejected? Well, there are two limitations, I think, two important limitations on what the trustee can do. It's not as though the trustee has carte blanche at that point. Why not? That's what I'm asking. If they have quasi-judicial immunity, they're bulletproof. So first of all, if the trustee acts in a way that is ultra-veris, that is completely outside the trustee's jurisdiction, I think an example of that- You're saying it's not outside the trustee's jurisdiction to go into the leasehold. In this case, it's not. No, in any case. In what case would it be? If it was not, unlike in this case, if it was not, for instance, if it should have been clear that the leasehold was not an asset of the estate, for instance. But isn't it always an asset of the estate when it's rejected? Well, in this case, the property that was being secured was part- it was the principal asset of the estate. The rejection of the lease just related to the relationship between the tenant and the landlord and provided that the tenant could remain, either at its option could remain in possession of the leasehold or could treat the lease as terminated at the tenant's option. You're saying any time a bankruptcy court enters an order like that, it doesn't really mean much because the trustee can go in and change the locks, repossess the property, and claim quasi-judicial immunity. Again, except in a case where the trustee is dealing with property that is clearly not part of the estate. I think the closest- No, but it usually is part of the estate. I mean, I guess to the- I hate to cite a case that goes the wrong way, but as an example of a case that did find that is the Leonard V. Vrooman case. I think that there is actually enough ambiguity in the facts in that case. It could have gone the wrong way. Of course, that case was decided under the Barton jurisdictional issue and not an immunity issue, and it was from the late 60s. But with those caveats aside, in that case, the trustee was held liable because unlike here, the asset was not part of the bankruptcy estate. In this case, the asset that was being secured, which he has the obligation to secure, is part of the bankruptcy estate. And indeed, if a bankruptcy trustee has to be hesitant before putting locks to secure the principal asset of the estate, that will put the trustee in an impossible position. But you don't have to be hesitant. You just have to not violate clearly established law. And as long as you don't do that, you'll be protected by qualified immunity. But quasi-judicial immunity is a lot broader, right? It's a- I'm certainly not going to disagree that qualified immunity under Harlow is another way to get here and also gets us to the same point here under affirmance. Thank you, Mr. Spurl. Thank you, Your Honors. Rebuttal, Ms. Sheets? Well, I think that that is the question, whether any tenant would then be vulnerable to self-help eviction if Your Honors decide that the Chapter 7 trustee is entitled to quasi-judicial immunity. You know, there are many, many bankruptcy cases that involve apartment dwellings, that involve shopping centers, that involve other commercial properties that have many tenants in there. So now we have a tenant that gets into a disagreement with the trustee and the trustee locks them out on the authority of this case without notice and without a prior hearing. You know, even now under the Pennsylvania law, even if there's a confession of judgment clause in a lease, the landlord still has to give 30 days before asking the prothonotary or the clerk of courts for a writ of execution. But the trustee here says there were exigent circumstances. Right. Well, what are exigents? Well, first of all, there's no state law that says that an exigent circumstance justifies a self-help eviction. You still have to comply with due process. There's no case law about that. That's what the Pennsylvania Supreme Court says. If the local authorities think that I'm violating a zoning law and they go in and remove my trailer from where it's sitting, they still have to give advance notice and I get to have a hearing before they do that. That's what Pennsylvania law says. That's what the Berman case says. That's really the most recent Pennsylvania Supreme Court. We all take it for granted. But here we're dealing with weather problems and a burst pipe and, you know, there may be an argument about whether adequate care was being taken, but the trustee is saying it was an exigent situation to protect this property. I needed to get in there and I had to change the locks to do so because I couldn't get the door open. Well, actually, what happened was that the cleanup had already started and she and the tenant were already cooperating. But if we accept what the trustee is saying, that there were exigent circumstances which are corroborated by the cold spell and the acknowledged burst pipe, doesn't that remove this case from the situation that was concerning Judge Hardiman where a trustee could simply toss out any tenant they wanted to? Well, I think the Mosser v. Darrow decision addresses that and says that the trustee has a remedy. She should go to the bankruptcy judge and get a court order that allows her to do that, just to go in for injunctive relief, just the way a landlord would, any landlord. She stands in the shoes of the landlord and that's what the Mosser case says. The Supreme Court said that that trustee should have gone into court and gotten approval and then he would have been protected. And here the same thing. She should have gone in and asked for injunctive relief, either from the bankruptcy judge or from the state court, depending on how she wanted to approach it. But by making her own decision to be the judge and the jury, so to speak, who decides that she's going to lock out the tenant without a prior court order, I think she is liable under the Harlow. And Mosser, wasn't Mosser a fiduciary duty case? Well, the Mosser case was where the trustee had hired a couple people who were selling for profit, essentially. He wasn't supervising, he wasn't accounting, he wasn't complying with the code. And had he gone into court and gotten prior approval to employ those people and have them do what they did, then he would have been insulated from liability. And that's what the Supreme Court said. If he was going to let them do that, he should have applied to the bankruptcy court for approval. Yeah, but isn't this a third-party tort case? Haven't you raised, in essence, a third-party tort claim as opposed to a fiduciary duty claim? Right. This is a landlord.  It's different. What I'm pointing out is different than the Mosser case. It's different than the Mosser case, but there really isn't any case on point, as we know. Okay, but that's why I wanted to make sure that there is a distinction. Right, it is different. But still, that case, which really is the only case that speaks to it, says the trustee can't function as the judge in that situation. The trustee has to go to the bankruptcy court and get authority. That's what the difference is. So if we're going to be throwing tenants out without prior judicial ruling on it, there being no law, how does the trustee decide in exigent circumstances, she thinks there's rats in there or the tenant's not keeping it clean or maybe they have candles burning or maybe they've had the electric turned off, they're concerned about something like that, which is one of the things that this trustee was concerned about, the break of a pipe in the corner of the restaurant. Can they really just invade the place? Isn't that a really? It's a little aggressive. It's a little more than aggressive. Which is why we're here, right? That's why we're here. All right. Thank you. Thank you to both counsel for the very helpful argument. While the next case sets.